## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MICHAEL D. VAN DEELEN,      )
           )
        **Plaintiff,**    )
           )       **CIVIL ACTION**
v.            )
           )       **Case No. 05-2028**
CITY OF KANSAS CITY, MISSOURI, )
et al.           )
           )
        **Defendants.**   )

### MEMORANDUM AND ORDER

Michael D. Van Deelen brings suit against the City of Kansas City, Missouri ("KCMO") and several of its employees. Under 42 U.S.C. § 1983, plaintiff claims that each defendant deprived him of constitutional rights to free speech, free assembly, free association, due process, equal protection and equal access to the courts, and retaliated against him for exercising those rights. Plaintiff also claims negligence and fraud under state law. First Amended Petition (Doc. #8) at 8–9, filed February 9, 2005. This matter comes before the Court on Defendants' Motion To Dismiss (Doc. #11) filed March 16, 2005. For reasons set forth below, defendants' motion is sustained in part and overruled in part.

### Factual Background

Plaintiff's first amended complaint may be summarized as follows:

In December of 2002, plaintiff, a Kansas resident and former employee of KCMO, filed suit in Kansas state court against KCMO and other individuals. Lana Torczon and Galen Beaufort, city attorneys for KCMO,

represented KCMO and others in the matter.  Plaintiff filed a motion to amend to add Donald Jarrett and Brian

Loopey as defendants after they testified before the KCMO Human Resources Board in 2003 that they

worked for KCMO.  On September 30, 2004, Torczon appeared at a hearing on behalf of KCMO and others

to oppose plaintiff's motion to amend to add Jarrett and Loopey.  The state court took the matter under

advisement.

On the same day, plaintiff filed a second state court action against KCMO, Jarrett and Loopey.

Plaintiff informed Torczon that "because of statute of limitation concerns and for other reasons," he was filing

a "fresh" suit against them.  <u>First Amended Petition</u> (Doc. #8) at 3.  Torczon indicated that he would not allow

plaintiff to serve Jarrett and Loopey.  The Sheriff's Department of Douglas County, Kansas delivered service

intended for Jarrett and Loopey to Roy Greenway, who allegedly supervised them at KCMO.  Greenway

informed Torczon that he had received service and gave the documents to Torczon and Beaufort, who returned

them to the Douglas County Sheriff.  In a cover letter dated October 20, 2004, Torczon stated that Jarrett and

Loopey were not and never had been KCMO employees, and that no one at KCMO was authorized to

receive service on their behalf.  Plaintiff did not receive a copy of the letter and Torczon informed plaintiff that

she was not obligated to include him in the correspondence.

In early January of 2005, Charlotte Reed (another city attorney for KCMO) sent a letter to plaintiff's

residence in Kansas which requested that plaintiff attend a meeting with Torczon and Reed on

February 8, 2005 on a matter unrelated to this action.

On January 19, 2005, plaintiff filed his original <u>Petition</u> (Doc. #1) in this action.  Plaintiff sued KCMO,

Torczon, Beaufort and Wayne Cauthen, who supervises Torczon and Beaufort.  On January 27, 2005, Douglas

McMillan entered his appearance as counsel for defendants.

In early February of 2005, plaintiff spoke with Reed over the telephone on a matter unrelated to this action.  Reed acknowledged that plaintiff had filed this action against KCMO and its employees.  On February 8, 2005, plaintiff met with Reed and Torczon at KCMO City Hall on a matter unrelated to this action. Reed was openly hostile toward plaintiff.  At the end of the meeting, Reed and Torczon ordered McMillan and Alan Manker, manager of KCMO security, to detain plaintiff.  Reed, Torczon and McMillan told him that he could not be at City Hall unless security was present.  McMillan and Manker transported plaintiff to the City Hall security office and continuously intimidated him both verbally and physically.  Manker told plaintiff that the detention resulted from his lawsuits against KCMO and its employees.  Later, as he escorted plaintiff from the building, Manker said that because of plaintiff's suits against KCMO, plaintiff could not enter a KCMO public building unless accompanied by a security guard.

On February 9, 2005, plaintiff filed his First Amended Petition (Doc. #8) in this case.  In addition to the original defendants, plaintiff joined Reed, McMillan and Manker.  Plaintiff claims that by interfering with service of process in a state court action and treating him harshly at City Hall, KCMO, Torczon, Beaufort, Reed, McMillan and Manker denied his constitutional rights of free speech, free assembly, free association, due process, equal protection and equal access to the courts, and retaliated against him for exercising those rights.[1]  Plaintiff further asserts state law claims that (1) each defendant committed fraud and negligence by "prevent[ing] plaintiff from serving his lawsuit on Mr. Jarrett and Mr. Loopey,"[2] and (2) KCMO, Cauthen and

---

[1]       Plaintiff makes catch-all constitutional claims at the conclusion of his First Amended Petition (Doc. #8) at 5–6, against KCMO, Torczon, Reed, McMillan, Manker and Beaufort.  Plaintiff does not, however, set forth factual allegations as to Reed, McMillan or Manker in regard to interference with service of process.  The amended petition includes no allegation that Beaufort was involved at City Hall.

[2]       Although plaintiff's state law claims make general reference to "defendants," First Amended
(continued...)

3

Beaufort are liable for negligent supervision and training. <u>First Amended Petition</u> (Doc. #8) at 6. Defendants seek dismissal of all counts. <u>Defendants Motion To Dismiss</u> (Doc. #11), filed March 16, 2005. Defendants assert that (1) the Court lacks subject matter jurisdiction; (2) the Court lacks personal jurisdiction as to actions which occurred exclusively in Missouri; and (3) plaintiff's complaint fails to state a claim upon which relief can be granted.

### Rule 12(b)(1) Motion to Dismiss Standard

The Court may only exercise jurisdiction when specifically authorized to do so, <u>see</u> <u>Castaneda v. INS</u>, 23 F.3d 1576, 1580 (10th Cir. 1994), and must "dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." <u>Scheideman v. Shawnee County Bd. of County Comm'rs</u>, 895 F. Supp. 279, 280 (D. Kan. 1995) (citing <u>Basso v. Utah Power & Light Co.</u>, 495 F.2d 906, 909 (10th Cir. 1974)); Fed. R. Civ. P. 12(h)(3). Plaintiff sustains the burden of showing that juridiction is proper, <u>see id.</u>, and he must demonstrate that the case should not be dismissed. <u>See</u> <u>Jensen v. Johnson County Youth Baseball League</u>, 838 F. Supp. 1437, 1439–40 (D. Kan. 1993).

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take two forms: facial attacks on the complaint or factual attacks on the accuracy of the allegations in the complaint. <u>See</u> <u>Holt v. United States</u>, 46 F.3d 1000, 1002–03 (10th Cir. 1995). Defendants' motion to dismiss falls within the former category because the Court need not consider evidence outside the complaint.

### Rule 12(b)(2) Motion to Dismiss Standard

---

[2](...continued)

<u>Petition</u> (Doc. #8) at 6, plaintiff does not in fact assert claims against Reed, McMillan or Manker because he does not allege involvement on their part.

4

The standard which governs a motion to dismiss based on lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., is well established. Plaintiff bears the burden of establishing personal jurisdiction over defendant. Before trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by defendants' affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in plaintiff's favor, and plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. Behagen v. Amateur Basketball Ass'n, 744 F.2d 731, 733 (10th Cir. 1984), cert. denied, 471 U.S. 1010 (1985); see also Williams v. Bowman Livestock Equip. Co., 927 F.2d 1128, 1130–31 (10th Cir. 1991); Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1417 (10th Cir. 1988).

### Rule 12(b)(6) Motion to Dismiss Standard

A Rule 12(b)(6), Fed. R. Civ. P., motion should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). The Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences from those facts in favor of plaintiff. See Shaw v. Valdez, 819 F.2d 965, 968 (10th Cir. 1987). In reviewing the sufficiency of plaintiff's complaint, the issue is not whether plaintiff will prevail, but whether plaintiff is entitled to offer evidence to support his claims. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although plaintiff need not precisely state each element of his claims, he must plead minimal factual allegations on those material elements that must be proved. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

The Court affords a pro se plaintiff some leniency and must liberally construe the complaint. Oltremari by McDaniel v. Kansas Social & Rehabilitative Serv., 871 F. Supp. 1331, 1333 (D. Kan. 1994). While pro se complaints are held to less stringent standards than pleadings drafted by lawyers, pro se litigants must follow the same procedural rules as other litigants. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992). The Court may not assume the role of advocate for a pro se litigant. Hall, 935, F.2d at 1110.

**Analysis**

**I.       Subject Matter Jurisdiction**

Defendants argue that the Court lacks subject matter jurisdiction because the nature of this action is "a subject traditionally relegated to state law." Memorandum In Support Of Defendants' Motion To Dismiss (Doc. #12) at 5. Torczon further asserts that the claims against her must be dismissed based on Younger abstention, see Younger v. Harris, 401 U.S. 37 (1971), and the Rooker-Feldman doctrine, see Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

**A.       Claims Arising Under State Law**

Defendants argue that federalism principles require the Court to dismiss plaintiff's claims because they stem from service of process, which is governed by state law. Defendants rely exclusively on Morris v. City of Hobart, 39 F.3d 1105, 1112 (10th Cir. 1994). In Morris, the Tenth Circuit held that the district court lacked subject matter jurisdiction to enforce a settlement agreement in a Title VII case because enforcement of the agreement was a state contract law question. Id. The Tenth Circuit found that Title VII did not "confer federal question jurisdiction over contract disputes arising out of private settlements." Id. at 1111–12 (citing

6

Langley v. Jackson State Univ., 14 F.3d 1070, 1073 (5th Cir. 1994)).

Morris does not require dismissal of this case.  Plaintiff has alleged various constitutional violations under Section 1983, which invokes federal question jurisdiction.  Claims under the United States Constitution are not traditionally relegated to state law.  Even though plaintiff's claims arise from service of process in a state lawsuit, they are nevertheless federal in nature because they assert violation of the Constitution.  The Court therefore overrules defendants' motion to dismiss all claims for lack of subject matter jurisdiction.

**B.      Claims Against Torczon**

Torczon seeks dismissal of plaintiff's claims under the Younger and Rooker-Feldman doctrines.

Torczon's arguments for applicability of these doctrines appear in their entirety as follows:

> The claims by Plaintiff related to Ms. Torczon's involvement in Plaintiff's Douglas County case are the only acts that occurred in Kansas.  These claims implicate pending state court proceedings.  The doctrines announced in Younger v. Harris, 401 U.S. 37, 43 (1971) and Rooker-Feldman, Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983), bar such claims as these doctrines preclude federal court intervention in state court proceedings.  Plaintiff's claims against Torczon are barred by the Younger Abstention Doctrine as those matters are best left to resolution by the state court.

Memorandum In Support Of Defendants' Motion To Dismiss (Doc. #12) at 5.  In her reply brief,

Torczon also conclusively states as follows:

> Plaintiff has failed to come forward with authority that defeats Ms. Torczon's assertion that this honorable [sic] lacks subject matter jurisdiction over her actions in the state court case involving Plaintiff based on the doctrines announced in Younger v. Harris, 401 U.S. 37, 43 (1971) and Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983).  Any complaints Plaintiff may have about how Ms. Torczon is handling the state court case should be raised in that proceeding and not a separate federal case.

Reply Memorandum In Support Of Defendants' Motion To Dismiss (Doc. #14) at 2, filed April 21, 2005.

7

Torczon does not explain how <u>Younger</u> or <u>Rooker-Feldman</u> apply in this action. The simple fact that federal claims implicate or are related to state court proceedings does not require dismissal under <u>Younger</u> or <u>Rooker-Feldman</u>. <u>See</u> <u>Crown Point I, L.L.C. v. Intermountain Rural Elec. Ass'n</u>, 319 F.3d 1211, 1215 (10th Cir. 2003) (citations omitted) (general test for <u>Younger</u> applicability); <u>see also</u> <u>Crutchfield v. Countrywide Home Loans & Mortgage Elec. Registration Sys., Inc.</u>, 389 F.3d 1144, 1147–48 (10th Cir. 2004) (rule for <u>Rooker-Feldman</u> operation). Absent explanation how the doctrines may apply, the Court overrules Torczon's motion to dismiss on those grounds.

## II.    Personal Jurisdiction

Defendants argue that the Court lacks personal jurisdiction because except as to Torczon, none of the defendants' alleged actions took place in Kansas. Plaintiff responds that (1) in representing KCMO and its employees in a Kansas state action, Torczon and Beaufort had frequent contacts with Kansas and (2) Reed purposely transacted business in Kansas by sending a letter to plaintiff. Plaintiff does not advance an argument for personal jurisdiction over any defendant except Torczon, Beaufort and Reed.

Because Section 1983 does not authorize nationwide service of process, <u>McNeal v. Zobrist</u>, 365 F. Supp. 2d 1166, 1168–69 (D. Kan. 2005), personal jurisdiction must be established under the Kansas long-arm statute. <u>Rainy Day Books, Inc. v. Rainy Day Books & Café, L.L.C.</u>, 186 F. Supp. 2d 1158, 1161 (D. Kan. 2002) (citations omitted).[3] The Kansas long-arm statute provides in relevant part that a person has submitted

---

[3]        Plaintiff also bases federal question jurisdiction on 28 U.S.C. § 1343, which provides district courts with original jurisdiction as to any civil action "[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States." 28 U.S.C. § 1343(a)(3). Section 1343 does not authorize nationwide service. <u>Lorelei Corp. v. County of Guadalupe</u>, 940 F.2d 717 (1st Cir. 1991).

to jurisdiction in Kansas as to any cause of action arising out of (1) "transaction of any business within this state" or (2) "commission of a tortious act within this state." K.S.A. § 60-308(b).

In Kansas, courts analyze motions to dismiss for lack of personal jurisdiction with a two-step inquiry. First, the Court must determine if defendants' conduct falls within one of the provisions of the Kansas long-arm statute. McNeal, 365 F. Supp. 2d at 1169; see also K.S.A. § 60-308(b). Second, the Court examines whether defendants had sufficient minimum contacts with the State of Kansas to satisfy the constitutional guarantee of due process. See Equifax Servs., Inc. v. Hitz, 905 F.2d 1355, 1357 (10th Cir. 1990). "[T]hese inquiries are for all intents and purposes the same because the Kansas long-arm statute . . . has been liberally construed by the Kansas courts to assert personal jurisdiction to the full extent permitted by the due process clause." Flannagan v. Bader, 905 F. Supp. 933, 936 (D. Kan. 1995) (citing Thompson v. Chambers, 804 F. Supp. 188, 195 (D. Kan. 1992)). Thus, the Court proceeds directly to the constitutional issue. Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Corp., 17 F.3d 1302, 1304 (10th Cir. 1994).

Due process requires "minimum contacts" between the nonresident defendant and the forum state. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).[4] These contacts must be such that defendant has purposefully availed himself of the privilege of conducting activities within the state. Hanson v. Denckla, 357 U.S. 235, 251 (1958). Defendant must be able to reasonably anticipate being haled into court in the forum

---

[4] Because subject matter jurisdiction in this case is predicated on a federal question, rather than diversity of the parties, the Court focuses its due process analysis on the Fifth Amendment instead of the Fourteenth. McNeal, 365 F. Supp. 2d at 1169 n.2 (citing Peay v. Bellsouth Med. Assistance Plan, 205 F.3d 1206, 1210 (10th Cir. 2000)). The inquiry is the same, however, regardless of which amendment underlies the due process "minimum contacts" analysis and cases on each are interchangeable. Rainy Day Books, 186 F. Supp. 2d at 1161; Packerware Corp. v. B & R Plastics, Inc., 15 F. Supp. 2d 1074, 1077 (D. Kan. 1998).

state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Jurisdiction in the particular case must

also be reasonable so as not to offend traditional notions of fair play and substantial justice. Heating & Cooling

Master Marketers Network, Inc. v. Contractor Success Group, Inc., 935 F. Supp. 1167, 1171 (D. Kan.

1996); Pehr v. Sunbeam Plastics Corp., 874 F. Supp. 317, 320 (D. Kan. 1995).

Plaintiff's amended complaint alleges that Torczon and Beaufort represented KCMO and its employees

in a state action which plaintiff filed in Douglas County, Kansas. During that representation, Torczon allegedly

telephoned plaintiff and sent letters to plaintiff, who resides in Kansas. Torczon and Beaufort also appeared

in the District Court of Douglas County, Kansas, and filed pleadings with that court. Torczon and Beaufort

intervened when the Douglas County Sheriff attempted to serve Jarrett and Loopey. To the extent plaintiff's

claims arise out of the alleged interference with service of process in Kansas, his allegations are sufficient to

make a prima facie showing that personal jurisdiction is proper over KCMO, Torczon and Beaufort.

Furthermore, KCMO and Torczon have submitted themselves to jurisdiction in Kansas as to plaintiff's Section

1983 claims regarding events at KCMO City Hall, which allegedly arose out of plaintiff's Kansas suits.[5]

Plaintiff has not made out a prima facie showing as to Reed, Cauthen, McMillan or Manker. Indeed,

plaintiff alleges that Reed sent him one letter, and telephoned him once, at his Kansas residence. As plaintiff

alleges, however, those contacts were unrelated to this action. Moreover, Reed was not involved in the Kansas

litigation. As a result, under K.S.A. § 60-308(b), those contacts cannot justify the exercise of personal

jurisdiction over Reed in this case.

Plaintiff makes no allegations that Cauthen, McMillan or Manker had any contact with Kansas. The

---

[5]       Plaintiff's complaint does not allege that Beaufort participated in any way with the detention at KCMO City Hall.

factual allegations which give rise to plaintiff's claims against these defendants occurred wholly in Missouri. Furthermore, Cauthen, McMillan and Manker were not involved in the Kansas litigation. From the allegations of plaintiff's complaint, it appears that Reed, Cauthen, McMillan and Manker have not purposefully availed themselves of the privileges of activity in Kansas. To exercise personal jurisdiction over these defendants would offend traditional notions of fair play and substantial justice.

Plaintiff has set forth a prima facie showing that personal jurisdiction is proper over KCMO, Torczon and Beaufort, but not Reed, Cauthen, McMillan and Manker.[6]

## III.    Section 1983 Claims Against KCMO and Defendants in Official Capacity

KCMO argues that plaintiff has not set forth facts sufficient to state a claim under Section 1983 and that, in any event, KCMO is not liable for its employees' alleged actions under a theory of respondeat superior. Plaintiff does not respond to this argument.

Local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). In other words, a municipality cannot be held liable under Section 1983 based on a respondeat superior theory. Id. A municipality may be held liable under Section 1983 only if a municipal policy or custom caused the constitutional injury. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 166 (1993); Monell, 436 U.S. at 694. The municipal policy or custom requirement is applied to official capacity suits against municipal actors because a Section 1983 suit against a municipality is the same as a suit against a municipal official acting in his

---

[6]        Plaintiff does not set forth the "continuous and systematic" contacts required to confer general jurisdiction over any of the named defendants in this case. See generally Helicopteros Nacionales de Colomibia, S.A. v. Hall, 466 U.S. 408 (1984).

or her official capacity.  Myers v. Okla. County Bd. of County Comm'rs, 151 F.3d 1313, 1316 n.2 (10th Cir.

1998).  Municipal policies may include policy statements, ordinances, regulations and even individual decisions

by city officials with "final policymaking authority." David v. City & County of Denver, 101 F.3d 1344, 1357

(10th Cir. 1996) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986) (plurality opinion)).  The

Supreme Court has defined municipal customs that may give rise to Section 1983 liability as those

discriminatory practices by city officials which are so "persistent and widespread" that they essentially have the

force of law.  Monell, 436 U.S. at 690–91 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167–68

(1970)).  Absent such an underlying policy or custom, a municipality cannot be held liable under Section 1983.

See generally Canady v. Unified Gov't of Wyandotte County/Kansas City, No. 02-2264, 2002 WL 31512323

(D. Kan. Nov. 7, 2002) (Section 1983 claims against local government dismissed because no allegation of

official policy or custom), aff'd, 68 Fed. Appx. 165 (10th Cir. 2003).

    The complaint does not identify any municipal policy, decision by a final policymaker or municipal

custom which caused plaintiff's alleged constitutional injuries.  Indeed, plaintiff bases his Section 1983 claims

against KCMO on its status as a party to plaintiff's two previously-filed state suits and as the employer of the

individual defendants.  KCMO cannot be held liable under a respondeat superior theory for its employees'

alleged actions, and it is not amenable to suit under Section 1983 without allegations of some KCMO policy

or custom which caused plaintiff harm.  The Court therefore sustains KCMO's motion to dismiss the Section

1983 claims against it.  Furthermore, plaintiff's claims for injunctive and declaratory relief against Torczon and

Beaufort in their official capacities are dismissed because such claims are essentially against KCMO.[7]

---

[7]     Plaintiff asserts claims against the individual defendants in both their official and individual
(continued...)

IV.    **Absolute Immunity from Section 1983**

Torczon and Beaufort move to dismiss plaintiff's Section 1983 claims based on absolute prosecutorial

immunity.[8]  Torczon and Beaufort assert that prosecutorial immunity bars plaintiff's Section 1983 claims

because they acted as attorneys for KCMO in plaintiff's state cases.  They cite Butz, 438 U.S. at 512, to argue

that attorneys are protected from liability that may arise from their "normal advocacy function."  Furthermore,

Torczon and Beaufort refer the Court to Imbler, 424 U.S. at 430, to claim that their immunity extends to trial

preparation and other activities related to the "advocacy process."  Memorandum In Support Of Defendants'

Motion To Dismiss (Doc. #12) at 7.  Plaintiff contends that prosecutorial immunity does not apply because (1)

Torczon and Beaufort were not acting in their normal advocacy function when they violated his rights; (2) their

alleged interference with service of process was not intimately associated with the advocacy process; (3)

judicial immunity applies only to prosecutors and not municipal attorneys; and (4) immunity only bars monetary

damages and not injunctive or declaratory relief.

---

[7](...continued)

capacities but does not specify which forms of relief, *i.e.* equitable or legal, are sought from each.  As he
proceeds pro se, the Court liberally construes plaintiff's complaint.  See Oltremari by McDaniel, 871 F.
Supp. at 1333; see also Perkins v. Kansas Dep't of Corrections, 165 F.3d 803, 806 (10th Cir. 1999).
In light of his pro se status and common practice in Section 1983 actions, the Court construes plaintiff's
complaint as asserting claims against Torczon and Beaufort for (1) equitable relief in their official capacities;
and (2) legal damages in their individual capacities.  This construction is confirmed in plaintiff's response.
In his brief, plaintiff cites Littlejohn v. Rose, 768 F.2d 765 (6th Cir. 1985) and Brandon E. ex rel.
Listonbee v. Reynolds, 201 F.3d 194 (3d Cir. 2000), each of which involved individual capacity claims
for money damages and official capacity claims for injunctive or declaratory relief.  See Plaintiff's Response
To Defendants' Motion To Dismiss And Memorandum Brief In Support Thereof (Doc. #13) at 8–9.

[8]       Defendants' motion incorrectly refers to "judicial" immunity, though defendants cite
authority which discusses the doctrine of prosecutorial immunity (sometimes classified as "quasi-judicial"
immunity), which is derivative of judicial immunity.  See generally Imbler v. Pachtman, 424 U.S. 409
(1976); see also Butz v. Economou, 438 U.S. 478 (1978).  The Court analyzes defendants' arguments
under the doctrine of prosecutorial immunity.

The question before the Court is whether the doctrine of absolute prosecutorial or "quasi-judicial" immunity protects city attorneys from Section 1983 damages claims which arise from their defense of a municipality and municipal employees in a state civil action. Immunities protect various participants in the judicial process and the Supreme Court has stated that absolute immunity is "necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." Butz, 438 U.S. at 512. In that light and due to their special responsibilities as members of the executive branch, common law bestows upon prosecutors an absolute immunity from damages claims. Id. at 510–12. The prosecutorial immunity extends to "activities . . . intimately associated with the judicial phase of the *criminal process*." Imbler, 424 U.S. at 430 (emphasis added).[9]

Absolute immunity has been stretched beyond the criminal process to cover conduct in civil proceedings where the government attorney is operating in an enforcement role and advocating for the state "in initiating and prosecuting judicial proceedings." Cooper v. Parrish, 203 F.3d 937, 947 (6th Cir. 2000); see, e.g. Fry v. Melaragno, 939 F.2d 832 (9th Cir. 1991) (in Bivens action, absolute prosecutorial immunity applied to federal government attorneys who brought suit for tax deficiencies); see also Juide v. City of Ann Arbor, 839 F. Supp. 497 (D. Mich. 1993) (city officials entitled to absolute immunity in civil forfeiture proceedings). Several circuits, including the Tenth Circuit, have also applied absolute immunity to protect government defense counsel. Barrett v. United States, 798 F.2d 565, 572 (2d Cir. 1986); Auriemma v. Montgomery, 860 F.2d 273, 275–78 (7th Cir. 1988); Murphy v. Morris, 849 F.2d 1101, 1105 (8th Cir. 1998); Fry v. Melaragno,

---

[9]    The Court emphasizes the words "criminal process" because defendants omitted them when quoting this passage in their motion. Defendants replaced these words with the words "advocacy process," which suggests a much broader meaning than Imbler holds.

939 F.2d 832, 837 (9th Cir. 1991); <u>Robinson v. Volkswagenwerk AG</u>, 940 F.2d 1369, 1372–73 (10th Cir.

1991).  As the Second Circuit noted in <u>Barrett</u>:

> [a]lthough government defense counsel, not having selected the other party as the target of the
> litigation, is in a more passive position than a prosecutor or plaintiff's representative, he
> nevertheless functions in an adversarial arena . . . and since he is charged with a public trust he
> should not be inhibited in the faithful performance of his duties by the threat of harassing
> lawsuits against him.  His function as a government advocate therefore entitles him to absolute
> immunity . . . .

798 F.2d at 572 (citing <u>Butz</u>, 438 U.S. at 512).  Thus, absolute immunity affords protection from Section 1983

damage actions to city attorneys acting in their official capacities in defense of civil suits.  <u>See</u> <u>Spear v. Town</u>

<u>of W. Hartford</u>, 954 F.2d 63, 66 (2d Cir. 1992).  Ultimately, however, to determine whether absolute immunity

applies, the Court looks to the nature of the function performed and not the identity of the actor who performed

it.  <u>Cooper</u>, 203 F.3d at 947 (citing <u>Forrester v. White</u>, 484 U.S. 219, 229 (1988)).

Torczon and Beaufort, city attorneys for KCMO, acted as defense counsel for KCMO and several

of its employees in a state civil action.  Plaintiff claims that in that action, Torczon and Beaufort interfered with

service of process on Jarrett and Loopey when they returned to the Douglas County Sheriff the papers served

on Greenway.  Torczon stated in a cover letter that Greenway and other KCMO employees were not

authorized to accept service for Jarrett and Loopey.  In asserting that service on Greenway was ineffective,

Torczon and Beaufort were well within the range of official advocacy-related functions.  Whether Torczon and

Beaufort may have engaged in questionable or harmful conduct is irrelevant.  <u>Barrett</u>, 798 F.2d at 573.

Immunity attaches to their advocacy function, not the manner in which they performed it.  <u>Id.</u>  To hold otherwise

could curtail the faithful performance of their public duties.  It is less clear that Torczon's conduct at KCMO

City Hall was part of her advocacy function as city attorney.  The Court cannot find as a matter of law that

ordering the physical restraint or detention of an adverse civil litigant is within the normal role of a city defense attorney.

With regard to claims arising out of service of process, the Court sustains the motion to dismiss Torczon and Beaufort in their individual capacities, based on absolute immunity. The Court rejects Torczon's claim that she is similarly entitled to absolute immunity in her individual capacity for claims based on conduct at KCMO City Hall.

## V.     Constitutional Violations at KCMO City Hall

Torczon argues that with regard to the events at KCMO City Hall, plaintiff has failed to state a claim for denial of the following rights: freedom of speech; freedom of assembly, freedom of association, access to the courts, equal protection and due process. Torczon urges that the facts merely suggest "discovery and other disputes related to other cases filed by [p]laintiff." Memorandum In Support Of Defendants' Motion To Dismiss (Doc. #12) at 7. Plaintiff simply responds that Torczon clearly violated his constitutional rights.

### A.     Freedom Of Speech

To properly bring a First Amendment claim, plaintiff must allege that (1) he has an interest protected by the First Amendment; (2) the First Amendment protected the statements which he made; and (3) defendant's action chilled the exercise of those rights. Romagnano v. Town of Colchester, 354 F. Supp. 2d 129, 134–35 (D. Conn. 2004) (citing Kerman v. City of New York, 261 F.3d 229, 241–42 (2d Cir. 2001) (citations omitted)); see also Eaton v. Meneley, 379 F.3d 949, 954 (10th Cir. 2004) (citing Waters v. Churchill, 511 U.S. 661, 669 (1994)). The complaint does not allege that plaintiff engaged in protected speech at KCMO City Hall or that Torczon chilled plaintiff's exercise of free speech. Plaintiff merely alleges that he was present at KCMO City Hall on a matter unrelated to this action and that Torczon summoned security to

detain him.  Such allegations are clearly insufficient to set forth a First Amendment claim.  The Court therefore dismisses plaintiff's claim against Torczon for denial of his right to free speech.

**B.      Freedom Of Assembly and Association**

In addition to freedom of speech, the First Amendment protects an individual's right to expressive association.  Roberts v. United States Jaycees, 468 U.S. 609, 622 (1984).  Specifically, it protects the associational and assembly rights of individuals to (1) enter into and maintain certain intimate or private relationships without unjustified government interference, and (2) associate to engage in protected speech, religious activities or expressive conduct.  Grace United Methodist Church v. City of Cheyenne, No. 03-8060, 2005 WL 2746701, *10 (10th Cir. Oct. 25, 2005).  Plaintiff does not allege that Torczon interfered with any intimate or private relationship at KCMO City Hall or that he was deprived of his right to assemble for a protected activity.  The Court therefore dismisses plaintiff's claims against Torczon for denial of his rights to free association and free assembly.

**C.      Access To The Courts**

To state an access claim, plaintiff "must identify a non-frivolous, arguable underlying claim" that plaintiff has been or will be unable to properly pursue because defendant's actions have denied meaningful access to the courts.  Christopher v. Harbury, 536 U.S. 403, 415 (2002).  In other words, to deny plaintiff his constitutional right of access to the courts defendant need not literally bar the courthouse door.  Chappell v. Rich, 340 F.3d 1279, 1282–83 (11th Cir. 2003) (citing Bell v. Milwaukee, 746 F.2d 1205, 1261 (7th Cir. 1984)).  Plaintiff has not alleged that Torczon denied him meaningful access to the courts by his actions at KCMO City Hall.  Furthermore, plaintiff does not allege that any claim or cause of action was impacted in any way by the events at KCMO City Hall. The Court therefore dismisses plaintiff's claim against Torczon for

denial of his right to access to the courts.

###### D.    Equal Protection

To state a Section 1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment, plaintiff must show that defendant acted with the intent or purpose to discriminate against plaintiff based on his membership in a protected class. Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (citing Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998), cert. denied, 525 U.S. 1154 (1999)). Plaintiff does not allege membership in any protected class or allege that during his visit to KCMO City Hall, Torczon discriminated against him because of his membership in such a class.  The Court therefore dismisses plaintiff's claim against Torczon for denial of his right to equal protection.

###### E.    Due Process

The complaint does not specify whether plaintiff asserts a claim for deprivation of procedural due process, substantive due process or both.  Because plaintiff proceeds pro se, the Court treats the complaint as if it asserts claims for both.

To state a claim for a violation of procedural due process under Section 1983, plaintiff must allege that (1) he was deprived of a definite liberty interest and (2) the procedures afforded to protect the interest were insufficient. Lassiter v. Topeka Unified Sch. Dist. No. 501, 347 F. Supp. 2d 1033, 1043 (D. Kan. 2004); see also Silvernail v. County of Kent, 385 F.3d 601, 604 (6th Cir. 2004).[10]  An individual has a liberty interest in

---

[10]      Procedural due process violations may also arise from deprivation of a property interest. Lassiter, 347 F. Supp. 2d at 1043.  A constitutionally protected property interest is a legitimate claim of entitlement to some benefit.  Id. at 1044 (citing Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)). Plaintiff does not allege that Torczon deprived him of any constitutionally protected property interest at KCMO City Hall.

his personal security, which is protected from state deprivation without due process.  Nicol v. Auburn-Washburn USD 437, 231 F. Supp. 2d 1092, 1103 (D. Kan. 2002) (citing Ingraham v. Wright, 430 U.S. 651, 652 (1977)).  Personal security includes an individual's freedom from bodily restraint.  Id.  Plaintiff alleges that Torczon ordered KCMO employees to detain plaintiff after a meeting at KCMO City Hall.  At Torczon's behest, KCMO security officers allegedly took plaintiff to the basement security office against his will.  Plaintiff claims that Torczon took this action without explanation or justification.  Plaintiff has set forth the minimal factual allegations required to state a procedural due process claim under Section 1983 for Torczon's actions at KCMO City Hall.  The Court therefore overrules Torczon's motion to dismiss in that regard.

To state a claim for a substantive due process violation, on the other hand, plaintiff must show (1) a deprivation of a protected interest in life, liberty or property and (2) that governmental conduct caused the deprivation of this protected right.  Rivera v. Rhode Island, 402 F.3d 27, 33–34 (1st Cir. 2005).  The standard for judging a substantive due process claim is whether the governmental conduct would "shock the conscience of federal judges."  Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 528 (10th Cir. 1998) (citations omitted).  Thus, the Tenth Circuit has held that "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing governmental power."  Id. (quotations omitted).  Plaintiff must demonstrate outrageousness and a truly shocking magnitude of actual or potential harm, i.e. more than an ordinary tort.  Id.; Abeyta ex rel. Martinez v. Chama Valley Indep. Sch. Dist. No. 19, 77 F.3d 1253, 1257 (10th Cir. 1996).  The Supreme Court has identified basic principles for the Court to consider in evaluating substantive due process claims: (1) the need for restraint in defining their scope; (2) the concern that Section 1983 not replace state tort; and (3) the need for deference to local policymaking bodies in making decisions impacting public safety.  Uhlrig v. Harder, 64 F.3d 567, 573 (10th Cir. 1995)

19

(citations omitted).  Plaintiff claims that he was detained without explanation and escorted to the KCMO security department by a larger and verbally abusive KCMO security guard.  Plaintiff was then escorted to the front door of KCMO City Hall and compelled to leave.  The complaint does not indicate any harm of a shocking magnitude that would be greater than that inflicted by an ordinary tort.  In light of the "conscience shocking" standard and the factors set forth by the Supreme Court, plaintiff's allegations against Torczon are not of a magnitude which shock the Court's conscience.  The Court therefore dismisses plaintiff's substantive due process claim against Torczon.

## VI.    State Fraud and Negligence Claims

Torczon and Beaufort further argue that official immunity bars plaintiff's Kansas law claims for fraud and negligence.  Citing only Missouri law, defendants assert that such immunity attaches to their discretionary acts as KCMO attorneys.  Moreover, Torczon, Beaufort and KCMO urge that plaintiff has not alleged the necessary elements — duty and breach of duty — required to state fraud and negligence claims.  Plaintiff urges that Kansas law, which Torczon and Beaufort do not cite, governs this action.  Plaintiff also asserts that in any event, official immunity only protects a public official from monetary damages that result from actions performed pursuant to the sovereign's governing power, which does not include tortious conduct.  Plaintiff does not address the argument that he did not plead a duty or breach of duty.

### A.    Choice of Law and Immunity

A federal court exercising supplemental jurisdiction over state law claims in a federal question lawsuit applies the substantive law, including choice of law rules, of the forum state.  Bancoklahoma Mortgage Corp. v. Capital Title Co., 194 F.3d 1089, 1104 (10th Cir. 1999) (citing Glennon v. Dean Witter Reynolds, Inc., 83 P.3d 132, 136 (6th Cir. 1996)).  Because this Court sits in Kansas, its choice of law rules determine whether

Kansas or Missouri law governs plaintiff's state law claims for negligence and fraud.  In tort actions, Kansas courts apply the substantive law of the "place of the wrong." Ling v. Jan's Liquors, 237 Kan. 629, 634 (1985). When an act or omission in one state causes injury in another, the situs of the wrong is said to be where the injury occurred.  Id.

Plaintiff asserts negligence and fraud claims against Torczon and Beaufort for their allegedly unlawful interference with service of process in a Kansas state court proceeding.  Specifically, plaintiff alleges that defendants ordered Greenway to turn service over to them and that once in possession of the papers, they returned service to the Douglas County Sheriff in Kansas.  Regardless whether these acts occurred in Kansas or Missouri, plaintiff's injury occurred in Kansas.  Kansas law therefore applies to plaintiff's state law claims.

Furthermore, the Court is not required to apply the official immunity enjoyed by government officials under Missouri law.  Taylor v. Phelan, 799 F. Supp. 1095, 1098–99 (D. Kan. 1992).  Both as a matter of constitutional law and judicial comity, Torczon and Beaufort are not entitled to such immunity.  Id. at 1099. The Kansas Supreme Court held in Head v. Platte County, 242 Kan. 442 (1988) that "when agents of a sister state or its subdivision enter this state, neither the public policy of Kansas nor the principles of judicial comity require [Kansas courts] to recognize the sister state's attributes of sovereign immunity." Id. at 442.  The Kansas Supreme Court further noted no constitutional bar to Kansas' exercise of jurisdiction over Missouri or its agents and held that "the full faith and credit clause of the United States Constitution (Art. IV, § 1) does not require a state to apply another state's law in violation of its own legitimate public policy." Id. at 446–48 (citing Nevada v. Hall, 440 U.S. 410 (1979)).  Missouri sovereign immunity law is inconsistent with Kansas public policy. Id. at 447.  In declining to apply Missouri official immunity law, Head is instructive. Taylor, 799 F. Supp. at 1099.  The Court therefore overrules the motion to dismiss of Torczon and Beaufort on

that ground.

**B.     Essential Elements of Kansas Fraud and Negligence Claims**

Torczon, Beaufort and KCMO ask the Court to dismiss plaintiff's state law fraud and negligence claims under Rule 12(b)(6).  They argue that plaintiff has not alleged that they owed him any duty.

Under Kansas law, "actionable fraud includes an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or recklessly made with a disregard for the truth, where another party justifiably relies on the statement and acts to his injury."  K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1156 (10th Cir. 1985) (quoting Lentz Plumbing Co. v. Fee, 235 Kan. 266, 270 (1984)).  A recipient of a fraudulent misrepresentation is justified in relying upon its truth without investigation, unless he knows or has reason to know of facts which make his reliance unreasonable.  Xiangyuan Zhu v. Countrywide Realty, Co., 165 F. Supp. 2d 1181, 1203 (D. Kan. 2001).  Reliance is not justified when the recipient has information which would signal danger to a person of normal intelligence and experience.  Id. (citing Goff v. Am. Savs. Ass'n, 1 Kan. App. 2d 75, 82 (1977)).  Fraud  by silence is also actionable in Kansas, and requires that defendant had an "obligation to communicate material facts to plaintiff.  Id. at 1202 (citing Plastic Packaging Corp. v. Sun Chem. Corp., 136 F. Supp. 2d 1201, 1205 (D. Kan. 2001)).

To assert a negligence claim under Kansas law, plaintiff must plead (1) existence of a duty, (2) breach of that duty, (3) injury and (4) a causal connection between plaintiff's injury and the duty breached.  Schmelzle v. Wal-Mart, Inc., 230 F. Supp. 2d 1254, 1259 (D. Kan. 2002) (citing Honeycutt ex rel. Phillips v. City of Wichita, 251 Kan. 451, 463 (1992)).

Plaintiff alleges that while they represented KCMO, Torczon and Beaufort fraudulently interfered with service of process upon Jarrett and Loopey by informing the Douglas County Sheriff that KCMO did not

22

employ them and that KCMO employees were not authorized to accept service on their behalf. Plaintiff, however, does not allege that defendants directed these representations to him, or that he justifiably relied upon these representations. Moreover, under a fraud by silence theory, plaintiff does not allege that Torczon and Beaufort owed him a duty to send him a copy of their letter to the Douglas County Sheriff. Plaintiff simply pleads the following:

> Defendants Torczon and Beaufort did not send plaintiff a copy of defendant Torczon's October 20, 2004 letter to the Douglas County Sheriff. Instead, plaintiff learned of the letter's existence when he viewed the docket sheet for case 04C566 in early January, 2005. Plaintiff called defendant Torczon and complained that she had not sent him a copy of the October 20, 2004, letter. Defendant Torczon told plaintiff that she was not required to copy plaintiff on the letter because it was addressed to the Douglas County Sheriff.

First Amended Petition [sic] (Doc. #8) at 4. Plaintiff does not allege that either Torczon or Beaufort had an obligation to send him a copy; rather he only pleads that he did not receive one. With regard to his alternative claims for negligence, Plaintiff again does not allege that Torczon, Beaufort or KCMO owed him any duty of care, and he does not plead a breach of any such duty. Plaintiff's complaint does not sufficiently allege Kansas claims for fraud or negligence against Torczon, Beaufort or KCMO. The Court therefore sustains their motions to dismiss on those grounds.

**IT IS THEREFORE ORDERED** that Defendants' Motion To Dismiss (Doc. # 11), filed March 16, 2005 be and hereby is **SUSTAINED in part** and **OVERRULED in part**. The Court sustains the motion as follows:

(1)     The Court dismisses all claims against Charlotte Reed, Wayne Cauthen, Douglas McMillan and Alan Manker for lack of personal jurisdiction;

(2)     The Court dismisses all Section 1983 claims against KCMO pursuant to Rule 12(b)(6),

Fed. R. Civ. P.;

(3)     The Court dismisses all Section 1983 claims for equitable relief against Torczon and Beaufort in their official capacities pursuant to Rule 12(b)(6), Fed. R. Civ. P.;

(4)     The Court dismisses all Section 1983 claims for damages arising out of service of process against Torczon and Beaufort in their individual capacities based on absolute immunity pursuant to Rule 12(b)(6), Fed. R. Civ. P.;

(5)     The Court dismisses the Section 1983 claims for deprivation of freedom of speech, freedom of association, freedom of assembly, access to the courts, equal protection and substantive due process against Torczon arising out of conduct at KCMO City Hall, pursuant to Rule 12(b)(6), Fed. R. Civ. P.;

(6)     The Court dismisses all state law claims for fraud and negligence, pursuant to Rule 12(b)(6), Fed. R. Civ. P.

Defendants' motion is overruled as to plaintiff's claim against Torczon for deprivation of procedural due process arising out of conduct at KCMO City Hall. Plaintiff's retaliation claims against Torczon also survive the motion to dismiss. Defendants did not address those claims in their motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P.

Dated this 14th day of November, 2005 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

24